OPINION
{¶ 1} Plaintiff-appellant State of Ohio appeals from the September 14, 2005, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, granting the Motion to Suppress filed by juvenile-appellee Daniel Cox.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellee Daniel Cox, who was born on November 19, 1992, was placed in the temporary custody of the Stark County Department of Job and Family Services in February of 2005 due to concerns of dependency and neglect in his home. A Guardian Ad Litem, Attorney Holly Davis, was appointed to represent appellee's interests in court.
 {¶ 3} On March 23, 2005, delinquency charges were filed against appellee in Case No. JU135950, alleging that appellee had committed the offenses of receiving stolen property and breaking and entering. Attorney Paul Hervey was appointed to represent appellee, who entered a plea of not true.
 {¶ 4} Subsequently, on June 23, 2005, appellee came before the court for a pretrial in Case No. JU135950. At the time, appellee was accompanied by his case worker, Tina Bossart. At such time, Tina Bossart informed the Magistrate that there were allegations that appellee had committed a rape while in his foster home and that, for such reason, appellee had been moved to a new foster home. At the June 23, 2005, hearing, Attorney Hervey, appellee's counsel, moved the trial court for an order forbidding any interrogation of appellee without Attorney Hervey's and the Guardian ad Litem's presence. The Magistrate took the matter under advisement. The Magistrate's order indicated that an assistant prosecuting attorney was present at the pretrial on June 23, 2005, although appellant disputes the assistant prosecuting attorney's presence.
 {¶ 5} Thereafter, on July 1, 2005, a delinquency complaint was filed against appellee in Case No. JU137721. The complaint alleged that appellee had committed the offense of rape "on or about the 17th day of June, 2005 to or about the 20th day of June, 2005 . . ." A warrant was issued for appellee's arrest. Subsequently, on July 5, 2005, Attorney Hervey was appointed to represent appellee and appellee entered a plea of not true in Case No. 00137721. A pretrial was scheduled for July 11, 2005.
 {¶ 6} On August 29, 2005, appellee filed a Motion to Suppress/Dismiss. Appellee, in his motion, argued that his statements to police should be suppressed since appellee, while represented by counsel, was interviewed in regard to the rape allegations without counsel's presence. Appellee, in his motion, alleged, in relevant part, as follows:
 {¶ 7} "In this case, the Juvenile was clearly in custody when interrogated by Detective Armstrong. He was in the temporary custody of JFS and his caseworker picked him up from his babysitter and told him he was going to the CPD [Canton Police Department] for an interview. The Juvenile was never given a choice about his cooperation. Even if the Juvenile was not previously represented, this statement would need to be suppressed for constitutional violations. However, the coordination by Prosecutor Schnellinger-Feisthamel in having the Juvenile interviewed while represented by Counsel violates Disciplinary Rule 7-104(A)(1). As such dismissal of the case for prosecutorial misconduct is the only appropriate solution in order to discourage such behavior. In the alternative, the Juvenile requests suppression of any statements made by him to anyone concerning this matter."
 {¶ 8} A hearing on appellee's motion was held on September 13, 2005. At the hearing, Detective James Armstrong of the Canton Police Department testified that he interviewed appellee in connection with allegations of sexual abuse that occurred between June 17, 2005, and June 20, 2005. Appellee was brought to the Canton Police Department for the interview by Tina Bossart, his case worker, after a warrant was issued. Detective Armstrong testified that he was aware that appellee, who was 12 years old, was unable to read and that he read appellee's Miranda rights to him. According to the detective, appellee never asked for counsel during the interview and never indicated that he had counsel. The entire interview lasted approximately 15 minutes. Detective Armstrong testified that appellee appeared to understand what was going on and admitted to the allegations of rape. Appellee, after being read his Miranda rights, signed a form waiving his constitutional rights.
 {¶ 9} On cross-examination, Detective Armstrong testified as follows when asked whether he had any concerns about whether or not he could talk to appellee: "At one point in time because he was, had an attorney, but it was on a previous case." Transcript at 32. The detective testified that he discussed his concern(s) with the assistant prosecuting attorney. The following is an excerpt of Detective Armstrong's testimony:
 {¶ 10} "Q. And you were aware that an attorney, specifically I — not that it mattered who it was, but that an attorney represented him in Juvenile Court already.
 {¶ 11} "A. On a different case, yes.
 {¶ 12} "Q. And you were aware that I had asked that, and his Guardian Miss Davies had asked that Daniel not be interviewed by anyone about this incident.
 {¶ 13} "A. I was not aware of that, no.
 {¶ 14} Q. You were not aware?
 {¶ 15} "A. No.
 {¶ 16} "Q. Tina Bossart had not told you that?
 {¶ 17} "A. No, she just brought him in and they came, like I said, we had the interview.
 {¶ 18} "Q. So you did not talk to Tina Bossart before the interview on the afternoon on July 1st?
 {¶ 19} "A. If I did it would have been very brief.
 {¶ 20} "Q. It is possible you talked to her that morning about making arrangements to meet up and interview Daniel?
 {¶ 21} She probably called me and I set up an interview, when to bring him in, yes.
 {¶ 22} "Q. Okay, and how many times had you talked to the prosecutor about interviewing Daniel before that?
 {¶ 23} "A. Maybe once." Transcript at 34.
 {¶ 24} Detective Armstrong further testified that he was unaware that Attorney Harvey and the Guardian Ad Litem had asked that appellee not be interviewed about the rape charges. The following testimony was adduced when the detective was questioned about appellee's Exhibit 1:
 {¶ 25} "Q. Detective Armstrong, I'm going to hand you what's been marked as Defendant's Exhibit `1' — or Juvenile Exhibit `1', review that and tell me when you're ready.
 {¶ 26} "A. I'm ready.
 {¶ 27} "Q. What is that document?
 {¶ 28} "A. That's the supplement made by myself.
 {¶ 29} "Q. And did you make that on your own or did somebody request that you do that?
 {¶ 30} "A. No, it's somewhat a normal procedure, especially when we don't tape a confession that I make a supplement as to what happened.
 {¶ 31} "Q. Okay. So no one asked you to make a supplement after the fact?
 {¶ 32} "A. No, it's just clarification, this particular one, it was just clearing up the facts.
 {¶ 33} "Q. And that supplement is dated what?
 {¶ 34} "A. This one is dated 6-30-05.
 {¶ 35} "Q. "So that's before you interviewed Daniel.
 {¶ 36} "A. Uh-huh (yes).
 {¶ 37} "Q. And in the bottom during the narrative, that's your narrative that's later type [sic] up, correct?
 {¶ 38} "A. Uh huh (yes).
 {¶ 39} "Q. Does that look like an accurate typing of what you dictated?
 {¶ 40} "A. I would have to say, probably, although there's no way to compare that because I don't have a copy except what the ladies type for me and I have to assume that's fairly accurate.
 {¶ 41} "Q. You literally phone it in what you're dictating?
 {¶ 42} "A. Yes, I do.
 {¶ 43} "Q. Okay. In your dictation there, in Exhibit `1', you describe knowledge that Daniel is represented by an attorney, or as you can say, under cloth of an attorney, correct?
 {¶ 44} "A. Correct.
 {¶ 45} "Q. So you were aware of that before you interviewed him, correct?
 {¶ 46} "A. That is correct.
 {¶ 47} "Q. And also, this is the day before he was interviewed, it also says — the next sentence is, he cannot be interviewed at this time, correct?
 {¶ 48} "A. Correct.
 {¶ 49} "Q. Why did you write that down?
 {¶ 50} "A. Because at that particular time I didn't know that it was a separate charge or even that's why he had the attorney. I was then advised by the prosecutor, it was a different allegation and a different offense, that it was not involving the sex offense.
 {¶ 51} "Q. So it sounds like you talked ot [sic] the prosecutor on more than one occasion about this case.
 {¶ 52} "A. It's possible, again with the work load, I'm in contact with her probably daily.
 {¶ 53} "Q. Now again, what changed your mind that made you feel the next day that you could interview Daniel?
 {¶ 54} "A. Because we discussed this was a separate case and he wasn't represented on this case." Transcript at 38-40.
 {¶ 55} On redirect, Detective Armstrong testified that, as far as he was aware, appellee had no attorney with respect to the rape allegations and that he was informed that appellee, in fact, had no attorney. The detective further testified that he indicated to appellee that he could speak to an attorney and that appellee understood that he could have an attorney present.
 {¶ 56} At the suppression hearing, Tina Bossart, appellee's case worker, testified that she recalled Attorney Hervey and the Guardian Ad Litem, on June 23, 2005, asking the Magistrate for an order that appellee not be interviewed about the allegations of rape. Bossart, however, was unsure if the assistant prosecuting attorney was present at such time. Bossart further testified that, on July 1, 2005, she took appellee down to the Canton police station to be interviewed by Detective Armstrong after the assistant prosecuting attorney told her that she needed to bring appellee to the police station to be interviewed. Bossart testified that she was told, after asking the assistant prosecuting attorney, that there was no court order preventing the interview. She further testified that it was clear from her conversation with the assistant prosecuting attorney that the assistant prosecuting attorney knew of the request of Attorney Hervey and the Guardian Ad Litem that appellee not be interviewed.
 {¶ 57} At the conclusion of the suppression hearing, the trial court granted the motion to suppress stating, in relevant part, as follows: "With regard to the interrogation by police I do find that the State was put on notice as to Defense Counsel's representation and objections to interview and I think it's also significant that Daniel had a Guardian ad Litem and that that was known as well. That the interrogation without counsel being present is misconduct and therefore the product of that interrogation will be ordered suppressed." Transcript at 75-76. The trial court's decision was memorialized in a Judgment Entry filed on September 14, 2005.
 {¶ 58} It is from the trial court's September 14, 2005, Judgment Entry that appellant timely filed the instant appeal pursuant to Juv.R. 22(F).[1] Appellant now raises the following assignment of error on appeal:
 {¶ 59} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN SUSTAINING THE JUVENILE'S MOTION TO SUPPRESS. THE FIFTH AND SIXTH AMENDMENTS DO NOT PROTECT A SUSPECT FROM POLICE QUESTIONING REGARDING MATTERS WHICH THE SUSPECT HAS NOT BEEN CHARGED WHEN THE SUSPECT FAILED TO ASSERT HIS RIGHT TO COUNSEL."
 I {¶ 60} Appellant, in its sole assignment of error, argues that the trial court erred in granting appellee's Motion to Suppress. We disagree.
 {¶ 61} At issue in the case sub judice is whether appellee's Fifth Amendment rights against self-incrimination and to counsel and Sixth Amendment right to counsel were violated. The Fifth Amendment protects against self-incrimination by requiring police to inform a defendant of his or her right to counsel. The Fifth Amendment right against self-incrimination is a personal right "that can only be invoked by the individual whose testimony is being compelled." Moran v. Burbine (1986), 475 U.S. 412, 433,106 S.Ct. 1135, 89 L.Ed.2d 410, fn 4. Thus, an attorney cannot invoke such right for his client. See State v. Williams,99 Ohio St.3d 439, 793 N.E.2d 446, 2003-Ohio-4164. The Fifth Amendment also guarantees a defendant's right to counsel. Id.
 {¶ 62} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." "[T]he Sixth Amendment right to counsel does not attach until after the initiation of formal charges." Moran, supra at 431. (Emphasis added). The Ohio Supreme Court noted in State v. Hill, 73 Ohio St.3d 433,653 N.E.2d 271, 1995-Ohio-287, that "an accused's Sixth Amendment right is offense specific. Thus, under McNeil [v. Wisconsin,501 U.S. 171], appointment of counsel with respect to one offense does not bar police questioning as to a second, uncharged offense." Id. at 446.
 {¶ 63} In the case of In re Gault (1967), 387 U.S. 1,87 S.Ct. 1428, 18 L.Ed.2d 527, the United States Supreme Court recognized constitutional rights, such as the right to counsel and the Fifth Amendment privilege against self-incrimination, are applicable to juveniles. The juvenile's Fifth Amendment and Sixth Amendment rights are the same as if he or she were an adult. SeeGault, supra.
 {¶ 64} We find that appellee's Fifth Amendment rights were not violated since appellee himself did not invoke his right to remain silent or to counsel. Attorney Hervey could not invoke appellee's Fifth Amendment rights for him.[2] We further agree with appellant that appellee's Sixth Amendment right to counsel was not violated since appellee had not yet been charged with rape. Thus, his Sixth Amendment right to counsel in the rape case had not yet attached since formal rape charges had yet to be initiated.
 {¶ 65} However, upon our review of the record, we find that appellee's constitutional right to due process of law was violated. The United States Supreme Court has held that juvenile proceedings must comply with the requirements of due process. SeeGault, supra. The United States Supreme Court also has emphasized that the admissions and confessions of juveniles require special attention. Haley v. Ohio (1948), 332 U.S. 596,68 S.Ct. 302, 92 L.Ed. 224.
 {¶ 66} We find that the conduct of the assistant prosecuting attorney in the case sub judice deprived appellee of the fundamental fairness guaranteed by the Due Process Clause of the Fourteenth Amendment. In Moran, supra, the United States Supreme Court recognized that, in some situations, police conduct, although not in violation of the Fifth or Sixth Amendments, may be so egregious as to rise to the level of a due process violation.[3] We find that the conduct of the prosecuting attorney in this case rose to such level.
 {¶ 67} In the case sub judice, the record establishes that the assistant prosecuting attorney arranged for appellee to be transported to the police station for an interview concerning the rape charges. This occurred even though the prosecuting attorney was well aware that both Attorney Hervey and appellee's Guardian Ad Litem had moved the trial court for an order that requested that the appellee not be interviewed without their presence, and was aware that that motion had been taken under advisement by the Magistrate and not ruled upon.
 {¶ 68} While Attorney Hervey had not been officially appointed appellee's counsel with respect to the rape allegations, since at such time, a case had yet to be filed, it is apparent from the record that he held himself out as appellee's attorney with respect to such allegations. Then, appellant was taken by his case worker, who is employed by Stark County Department of Jobs and Family Services, to the police station at the direction of the prosecuting attorney. We note that the Stark County Department of Jobs and Family Services has an inherent conflict in this matter. Not only must the department protect the integrity of the foster home in which appellee was placed, but the department is also charged with protecting appellee, as a juvenile who was in its custody.
 {¶ 69} As is stated above, Tina Bossart, appellee's case worker, testified that it was clear from her conversation with the assistant prosecuting attorney that the assistant prosecuting attorney was aware of the request made by Attorney Hervey and the Guardian Ad Litem not to have appellee interviewed. Bossart further testified that, despite such request, the assistant prosecuting attorney arranged for Bossart to have appellee interviewed by Detective Armstrong with respect to the rape allegations. As is noted above, Detective Armstrong testified that, before interviewing appellee, he asked the assistant prosecuting attorney whether it was appropriate to interview him since Detective Armstrong believed that appellee was represented by counsel. However, Detective Armstrong was advised by the assistant prosecuting attorney that he could interview appellee. As noted by the trial court on the record at the conclusion of the suppression hearing, "the State was put on notice as to Defense Counsel's representation and objections to interview and I think it's also significant that Daniel had a Guardian ad Litem and that that was known as well." Transcript at 75-76. In view of the fact that appellee was a 12 year old illiterate who could not read and who had had a Guardian ad Litem appointed to protect his interests, we find that appellee was deprived of fundamental fairness by the assistant prosecuting attorney's actions. While the assistant prosecuting attorney clearly was attempting to zealously represent the State in determining the validity of the rape allegations we find that she went too far in this matter.
 {¶ 70} Based on the foregoing, we find that the trial court did not err in granting appellee's Motion to Suppress statements that appellee made to Detective Armstrong.
 {¶ 71} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 72} Accordingly, the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.
Edwards, J. Farmer, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Juv. R. 22 (F) states, in relevant part, as follows: "In delinquency proceedings the state may take an appeal as of right from the granting of a motion to suppress evidence if, in addition to filing a notice of appeal, the prosecuting attorney certifies that (1) the appeal is not taken for the purpose of delay and (2) the granting of the motion has rendered proof available to the state so weak in its entirety that any reasonable possibility of proving the complaint's allegations has been destroyed."
[2] See Williams, supra., in which the court held that "Penamon, even as an attorney, could not invoke William's Fifth Amendment rights because such rights are personal to Williams. This principle is true even though Penamon had asked police not to question Williams . . ." Id. at paragraph 30.
[3] In Moran, the police failed to inform the respondent of the telephone call from an attorney retained by the respondent's sister without respondent's knowledge. The police also told such attorney that no further interrogation of the respondent would take place until the morning when, in fact, the interrogation continued.
After his Motion to Suppress Statements that he made to police was denied, the respondent was found guilty of murder. On appeal, in addition to asserting Fifth and Sixth Amendment violations, the respondent maintained that the conduct of the police was so offensive as to deprive him of fundamental fairness under the Due Process clause of the Fourteenth Amendment. The United States Supreme Court, while noting that "on facts more egregious than those presented here," there could be a due process violation, found no due process violation.